CIPRIANI & WERNER, P.C.
**Salvatore Vilardi, Esquire**
Attorney ID# 84718
450 Sentry Parkway, Suite 200
Blue Bell, PA  19422
(610) 567-0700

| | | |
|---|---|---|
| KAREN MANERI | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | NO:  2:17-cv-03881 |
| | : | |
| STARBUCKS CORPORATION | : | |
| | : | |
| Defendants | : | |

# MOTION FOR SUMMARY JUDGMENT OF
# DEFENDANT STARBUCKS CORPORATION

Defendant Starbucks Corporation, by and through its counsel, Cipriani & Werner, P.C., and Salvatore Vilardi, Esquire, files the within Motion for Summary Judgment and in support thereof, asserts the following:

**I.      PROCEDURAL STATUS**

1.      Plaintiff Karen Maneri filed a Civil Action Complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania, on August 9, 2017.  A true and correct copy of Plaintiff's Complaint is attached hereto as Exhibit "A."

2.      Moving Defendant removed this matter to the United States District Court for the Eastern District of Pennsylvania on August 29, 2017.  See Notice of Removal hereto attached as Exhibit "B."

3.      Moving Defendant subsequently filed an Answer with Affirmative Defenses, a true and correct copy of which is hereto attached as Exhibit "C."

4. Discovery is complete and the matter is now ripe for summary judgment.

5. In conjunction with this Motion for Summary Judgment, Moving Defendant has filed a <u>Daubert</u> Motion requesting that Plaintiff's liability expert, Jeffrey C. Lolli, Ed.D., be precluded from testifying at Trial. That Motion is hereby incorporated here in its entirety.

6. There is no genuine issue of fact, and Defendant Starbucks Corporation is entitled to judgment as a matter of law.

## II.  STATEMENT OF FACTS

### A.  Complaint

7. The Complaint alleges that on or about January 8, 2017, Plaintiff purchased tea the Starbucks located at 851 West Lancaster Road in Devon, Pennsylvania, by way of the drive-through window. See Exhibit "A," ¶ 7.

8. Plaintiff received her beverage, placed it in the cup holder in the center console of her vehicle, and then drove home - a trip lasting about four or so minutes. See Exhibit "A," ¶¶ 8, 10 and 11.

9. Plaintiff avers that the lid on the cup of tea "unexpectedly and without notice of warning, popped off" the cup, causing her to suffer a burn on the right calf. See Exhibit "A," ¶ 11.

10. Plaintiff's Complaint asserts five causes of action: vicarious liability, negligence, products liability, breach of warranty of merchantability and breach of warranty of fitness for a particular purpose. See Exhibit "A."

### B.  Plaintiff's Liability Expert Report

11. Plaintiff produced a report from Jeffrey Lolli, Ed.D., which is hereto attached as Exhibit "D."

12. Lolli, generally, expresses three opinions with respect to Moving Defendant and Plaintiff's incident:

    1. the tea served to Plaintiff on the date of the subject incident was excessively hot;

    2. the cup at issue should not have double-cupped Plaintiff's hot tea as double cupping prevents the store partner from insuring that the lid was properly secured; and

    3. Plaintiff's conduct did not contribute to her injuries.

See Exhibit "D."

13. As discussed in greater detail in Moving Defendant's <u>Daubert</u> Motion, Lolli is unqualified to express the opinions within his report. Moreover, he fails to identify applicable and appropriate industry standards. He fails to support his opinions with facts of record.

    **C.**     **Plaintiff's Testimony**

        **1.**     **Plaintiff Was Aware That Her Beverage Was Served Hot**

14. Plaintiff acknowledged that she ordered and expected to be served hot tea. She testified as follows:

    Q.     Ma'am, you alleged in your complaint that the tea was too hot or that – excuse me—that Starbucks failed to warn you that the tea was hot. Is it fair to say that you were already aware of the fact that the tea was hot before the day of this accident?

    A.     It's hot tea, so –

    Q.     Okay.

    A.     I – I'm confused. It's hot tea. I ordered hot tea. It's going to be hot, so I'm not really…

    Q.     So on the date of the accident when this tea was hot, you weren't surprised by that fact?

    A.     That it was hot tea because I ordered it?

> Q. Right.
>
> A. Yeah.
>
> Q. Okay. Alright.
>
> A. I didn't order iced tea. I ordered hot tea.

A true and correct copy of Plaintiff's deposition transcript is hereto attached as Exhibit "E." See pgs, 24-25.

15. Moving Defendant provided warnings at the time of purchase that the contents of the cup were extremely hot. Photographs of said warnings have been hereto attached as Exhibit "F."

16. The lid, affixed to the hot beverage served to Plaintiff, states: "CAUTION CONTENTS HOT." See Exhibit "F."

17. The cup itself includes a warning which states that the contents thereof are "extremely hot." See Exhibit "E."

18. With respect to her interaction with store personnel, Plaintiff had very little recollection of the particulars, especially with respect to her own handling of the cup of tea.

19. For instance, she did not recall the position of the cup when she received it from the store partner. She testified as follows:

> Q. Do you remember where the exchange was?
>
> A. I mean, my window probably somewhere between my window and their window but I don't recall exactly where the hand off took place.

See Exhibit "E", pg. 33

20. In terms of taking possession of the tea, Plaintiff testified as follows:

> Q. Okay. And when you reached for the tea, did you reach with your left hand or your right?
>
> A. I don't recall.
>
> Q. Okay. Do you remember if you had to stretch out to get it?
>
> A. I don't remember.
>
> Q. Okay. Do you remember how he handed it to you?
>
> A. No. I don't remember.
>
> Q. Okay. I'll ask the follow -- I think I know the answer but I'll ask anyway.
>
> A. Yeah.
>
> Q. Do you remember if he handed it to you with one hand or two hands?
>
> A. Yeah. I totally don't remember that.

See Exhibit "E", pg. 33-34.

21. Plaintiff testified that she could not recall whether she had to transfer the cup from one hand to the other in order to transport it from the window of her vehicle to the cup holder in the center console. She testified:

> Q. Okay. Do you have any recollection as to whether you had to transfer the drink from your left hand to your right hand?
>
> A. I don't recollect.
>
> Q. And do you remember placing the cup in the cup holder that day?
>
> A. I did put the cup in the cup holder that day.
>
> Q. Okay.· And did you do so with your left –
>
> A. I don't recall.

See Exhibit "D", pg. 36.

22. She testified further regarding this issue, noting once again her lack of recollection:

> Q. Okay. I'll re-ask the question. You know for a fact that the cup ended up in the cup holder, right?
>
> A. Yes.
>
> Q. Okay. Do you know whether you placed it in the cup holder with your right, your left, or with two hands, or something else?
>
> A. I do not recall.

See exhibit "E", pgs. 36-37.

23. Plaintiff made no observations of the cup and lid prior to the incident that support her claim that the lid was not properly affixed. She testified as follows:

> Q. When you have -- when you took first possession of the cup, you didn't see anything that would indicate to you that the lid would loose?
>
> A. I didn't look at it. So I don't -- I handed it, put it in the cup holder, and I was driving. So I wasn't looking at the cup at the time.
>
> Q. Okay. I understand that you weren't looking at the cup. Did you have any sense at all, in anyway --
>
> A. I didn't.
>
> Q. Whether physical or otherwise, that the lid was on there loose?
>
> A. Never dawned on me look at it.

See Exhibit "E", pg. 81.

24. The cup was received and placed in the cup holder without issue. Plaintiff did not recall any tea on the sides of the cup which would indicate that the lid was not properly affixed. She testified:

> Q. When you put the cup in the cup holder, did you have any trouble doing that?

>   A. No.
>
>   Q. Any tea spill onto your hand as you're putting the cup in the cup holder.
>
>   A. I don't recall. I don't recall if it came out of the little lip. I have no idea.
>
>   Q. So putting aside what may have come out of that little lip --
>
>   A. I don't recall.

See Exhibit "E", pgs. 81-82.

    25. Plaintiff did not recall any tea spilling from the cup between the time she received it to the time she placed it in the cup holder:

>   Q. So you told me earlier that you put the cup in the cup holder and you didn't remember which hand it was. I'm going to take that just to the next step, which is, while you're putting the cup in the cup holder, do you recall any tea spilling out of the sides between the lid and the cup?
>
>   A. I honestly don't recall if any tea spilled or dripped down, I just don't.
>
>   Q. Do you remember if there's any tea along the side of the cup when they handed it to you?
>
>   A. I don't know. I mean, I...
>
>   Q. Do you recall that when you put the cup in the cup holder and pulled your hand away, whether your hand was completely dry or wet?
>
>   A. I don't recall.

See Exhibit "E", pgs. 83-84.

    26. Plaintiff testified that she did not know when the lid came off the cup during her drive home:

> Q. Okay. Do you know if it popped off while you were still -- before you entered your driveway or after
>
> A. I don't recall.

See Exhibit "E", pg. 47.

> Q. -- just so we have it on the record, do you know what point during your drive the cup lid came out off?
>
> A. I don't know exactly what -- I didn't notice until I felt the pain.
>
> Q. Okay. And you didn't feel the pain until you were in your driveway?
>
> A. Correct.

See Exhibit "E", pgs. 84-85.

27.  Plaintiff has no facts to support her claim that the subject incident occurred as a result of the acts or omissions of any Starbucks store partner.

## II.  SUMMARY JUDGMENT STANDARD

28.  Federal Rule of Civil Procedure 56 provides:

> (a) MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

F.R.C.P. 56.

29.  Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

30. The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). A fact is 'material' if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if there is sufficient evidence from which a jury could find in favor of the non-moving party. Id. at 248-49.

31. Once the moving party carries this initial burden, the non-moving party must "come forward with specific facts showing there is a genuine issue for trial." Matsushita Elec. Indus. Co., supra, 475 U.S. at 587.

## IV. LEGAL ARGUMENT

### A. Plaintiff Requires Expert Testimony to Establish Liability

32. Plaintiff's claims are such that in the absence of expert testimony, she will be incapable of meeting her burden of proof as to any cause of action.

33. Plaintiff claims that Moving Defendant failed to adhere to industry standards. She, therefore, requires an expert to testify as to the existence and scope of those standards, and then address why or how Moving Defendant failed to meet those standards.

34. Plaintiff claims that the cup, lid, or both were improperly designed or manufactured. Standards relating to the design and manufacture of cups for commercial use are beyond the ken of knowledge of the average layperson.

35. Moving Defendant has filed a Daubert Motion requesting that this Honorable Court preclude Plaintiff's liability expert, Jeffrey C. Lolli, Ed.D., from testifying at Trial as he is unqualified to express the opinions in his report, as he fails to identify the applicable industry standards, and fails to support his opinions with facts of record.

36. In the event that Motion is granted, Plaintiff will be unable to establish her burden of proof. As such, summary judgment in favor of Moving Defendant would be appropriate.

**B. Plaintiff Cannot Establish a Breach of Duty in Support of Her Negligence Claim**

37. Count I of the Complaint alleges vicarious liability. There is no basis for recovery under a theory of vicarious liability unless Plaintiff can establish that Moving Defendant's committed tortious acts or omissions and those acts or omissions resulted in Plaintiff's injuries. See Exhibit "A."

38. Count II of the Complaint alleges negligence. See Exhibit "A."

39. To recover under a negligence theory, Plaintiff must establish the following elements: (1) a duty or obligation recognized by the law that requires an actor to conform his actions to a standard of conduct for the protection of others against unreasonable risks; (2) failure on the part of the defendant to conform to that standard of conduct, i.e., a breach of duty; (3) a reasonably close causal connection between the breach of duty and the injury sustained; and (4) actual loss or damages that result from the breach." Gutteridge v. A.P. Green Servs., 804 A.2d 643 (Pa. Super. 2002).

40. As per the Complaint, and with the support of her liability expert's opinions, it appears that Plaintiff is pursing two theories: that the tea was served to Plaintiff at an extreme temperature and that the store partner (employee) who prepared her beverage should not have double cupped her drink as double-cupping (nesting one cup within a second cup) prevents the store partner from insuring that the lid is securely affixed to the cup. See Exhibits "A" and "D."

41. Neither theory is viable here as discussed further below.

**1. Excessive Heat is Not a Viable Theory of Recovery**

42. Lolli, Plaintiff's liability expert, claims that the tea served to Plaintiff was excessively hot. See Exhibit "D."

43. Lolli cites testimony from store partners indicating that tea is brewed at a temperature of approximately 190 degrees Fahrenheit; and that the brewers at the subject location are pre-set to heat water to that temperature. See Exhibit "D."

44. Lolli acknowledges in his report that he does not know the temperature of the tea served to Plaintiff on the date of the incident.

45. Moreover, he fails to identify any industry standards, let alone identify industry standards violated by Moving Defendant.

46. Lolli's opinion that the tea was excessively hot is unsupported either by the "standards" he cites, nor by way of any testimony secured during the course of discovery.

47. Lolli's opinion is also contrary to the numerous legal decisions throughout the country which acknowledge that certain beverages are, by their very nature served at temperatures exceeding 190 degrees Fahrenheit. As such, merely claiming that a hot beverage is "too hot", is insufficient to establish liability.

48. For instance, in the matter of Huppe v. Twenty-First Century Restaurants of America, Inc., 130 Misc.2d 736, 497 N.Y.S.2d 306 (Sup. Ct. Broome 1985), *aff'd* 116 A.D.2d 797, 498 N.Y.S.2d 332 (3d Dep't 1986), a New York appellate court provided the following sentiment which has been echoed by courts in multiple other states[1]:

---

[1] See McMahon v. Bunn-O-Matic Corporation et. al., 150 F.3d 651 (7th Cir. 1998); Wurtzel v. Starbucks Coffee Company, 257 F. Supp. 2d 520, 527 (E.D.N.Y. 2003); McCroy v. Coastal Mart Inc., et. al., 207 F. Supp. 2d 1265 (D. Kan. 2002); Gessman v. Superamerica Group, Inc., 1998 U.S. Dist. Lexis 22940, *13-14, *22 (D. Ohio 1998); Lamkin v. Braniff Airlines, Inc., 853 F. Supp. 30, 32 (D. Mass. 1994); Fung-Yee Ng v. Barnes and Nobles, Inc., 308 A.D.2d 340, 764

> [T]he fact that the coffee was hot enough to cause injury if not properly handled does not mean that it was defective or negligently served. Where, as here, a product by its very nature has a dangerous attribute, liability is imposed only when the product has an attribute not reasonably contemplated by the purchaser or is unreasonably dangerous for its intended use.
>
> Since plaintiffs clearly intended to purchase hot coffee and since coffee is customarily served and intended to be consumed as a hot beverage, plaintiffs must present evidentiary facts establishing that the coffee served by defendant was defective or unreasonably dangerous by virtue of being hotter that it should have been. Plaintiffs have wholly failed to meet this burden. They merely make the conclusory allegation that the coffee was "super heated" and "too hot" …Since plaintiffs have failed to show that the coffee was so hot that it exceeded the reasonable or customary standards for such a product, there is no evidence from which a trier of fact could conclude that the coffee was defective, unreasonably dangerous or negligently served.

497 N.Y.S.2d at 308, (*citing* Robinson v. Reed-Prentice Div. of Package Mach. Co., 49 N.Y.2d 471, 479, 426 N.Y.S.2d 717, 720, 403 N.E.2d 440 (1980)).

49. For these reasons, claims that a hot beverage was served "too hot" are regularly and summarily dismissed. See Olliver v. Heavenly Bagels, Inc., 189 Misc.2d 125, 729 N.Y.S.2d 611 (Sup. Ct. Nassau 2001); Huppe v. Twenty-First Century Restaurants of America, Inc., 130 Misc.2d 736, 497 N.Y.S.2d 306 (Sup. Ct. Broome 1985), *aff'd* 116 A.D.2d 797, 498 N.Y.S.2d 332 (3d Dep't 1986); McMahon v. Bunn-O-Matic Corporation et. al., 150 F.3d 651, 659 (7th Cir. 1998), Holowaty v. McDonald's, et. al., 10 F. Supp. 2d 1078, 1083 (D. Minn. 1998); Barnett v. Leiserv, Inc., 968 F. Supp. 690 (N.D. Ga. 1997); Greene v. Boddie-Noell Enterprises, Inc., 966 F. Supp. 416, 418 (W.D. Va. 1997); Lamkin v. Braniff Airlines, Inc., 853 F. Supp. 30, 32 (D. Mass. 1994).

---

N.Y.S.2d 183 (1st Dep't 2003); Olliver v. Heavenly Bagels, Inc., 189 Misc.2d 125, 729 N.Y.S.2d 611 (Sup. Ct. Nassau 2001); and Martinelli v. Custom Accessories, Inc., et al., 14 Mass L. Rptr. 601 (Mass. Super. 2002); Oubre v. E-Z Serve Corporation, et. al., 713 So.2d 818, 820-21 (Ct. of App. 5th Cir. La. 1998).

50. Plaintiff testified that she ordered and expected to receive hot tea – the same hot tea she had repeatedly and regularly purchased at the subject Starbucks.

51. Plaintiff has failed to present this Honorable with any objective basis to support her claim that the tea served to her on the date of the subject incident was so hot as to permit recovery, contrary to the litany of cases which hold otherwise.

52. There are no material distinguishing facts that would separate the instant matter from the decisions in the cases cited herein dismissing claims that a hot beverage was "too hot."

53. Moving Defendant respectfully requests that this Honorable Court dismiss any that premised on the argument that the tea was served "too hot" or at a temperature that exceeds industry standards.

    **2. No Basis to Claim Double Cupping Causing Plaintiff's Alleged Injuries**

54. Plaintiff's liability expert, Lolli, opines that double-cupping a hot beverage impairs the store partner's ability to insure that the lid is properly affixed to the cup.

55. Lolli lacks the requisite education, training and experience to express those opinions as there is nothing in his curriculum vitae indicating he has ever worked in a similar environment, nor performed similar tasks.

56. Lolli's opinions on the subject are his own. He cites no industry standards, nor any materials that support his opinion that double cupping complicates the process by which a lid is affixed to the cup. See Exhibit "D."

57. He appears to have conducted no testing to determine the viability of his opinions. See Exhibit "D."

58. He fails to cite any evidence of record to support his opinion, likely because the three store partners who provided deposition testimony indicated that they had no trouble affixing a lid to a double cup. See Exhibit "D"; see also Moving Defendant's <u>Daubert</u> Motion.

59. Plaintiff has not presented any objective, admissible evidence to support her theory that the subject incident was the result of the barista double-cupping her drink.

60. Plaintiff cannot establish the requisite elements of negligence and as such, Count I and II of the Complaint should be dismissed with prejudice.

    **C.    No Evidence to Support Plaintiff's Products Liability Claim**

61. Count III of the Complaint asserts a products liability claim, seemingly attacking every aspect of the tea sold to Plaintiff.

62. Plaintiff alleges that the tea was served "at a temperature far too hot for a person to drink . . ." See Exhibit "A", ¶35.

63. Plaintiff alleges that the lid failed to remain affixed to the cup, "causing the container to suffer structural failure . . ." See Exhibit "A", ¶36.

64. The Complaint alleges that the warnings on the cup were insufficient. See Exhibit "A", ¶37.

65. ¶38 alleges that the lid was defective although the nature of the defect is undefined. See Exhibit "A", ¶38.

66. Plaintiff's product liability claim relating to the temperature of the tea is unsupported, as discussed in greater detail above.

67. Plaintiff has failed to present this Honorable Court with evidence or expert opinion regarding the design or manufacture of the lid, or any evidence of structural failure of the cup and lid at issue.

68. While Plaintiff claims that the warnings were insufficient, Plaintiff failed to produce an expert opinion addressing the warnings. Moreover, Plaintiff herself has testified that she was aware that the tea was hot.

69. A party pursuing a products liability claim, must " . . . prove, first, that the product was defective. Second, that if a defect existed when it left the hands of the defendant, that is, left the process by which it was produced at the defendant's plan. And three, that the defect caused the harm." Tincher v. Omega Flex, 628 Pa. 296, 315 (2014).

70. Plaintiff has failed to establish that the product – whether the tea, cup or lid –- was defective.

71. For those reasons, Count III of Plaintiff's Complaint alleging products liability must be dismissed.

**D.     No Evidence That The Product Was Below Commercial Standards**

72. Count IV of the Complaint alleges breach of warranty of merchantability. See Exhibit "A."

73. Under Pennsylvania law, this cause of action "arise[s] by operation of law and serve[s] to protect buyers from loss where the goods purchased are below commercial standards." Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992).

74. Goods subject to this warranty must be "fit for the ordinary purposes for which such goods are used." 13 Pa. Cons. Stat. Ann. § 2314(b)(3).

75. To meet her burden of proof, Plaintiff Maneri must establish that the product was defective which requires evidence that: (1) the product malfunctioned, (2) that plaintiff used the product as intended or reasonably by the manufacturer, and (3) and the absence of secondary

causes. Altronics of Bethlehem, 957 F.2d at 1105; see also Penns Crossing Builders v. Jeld-Wen, Inc., Civil Action No. 10–3967, 2011 WL 4528384, at *7 (E.D. Pa. Sept. 30, 2011).

76. There is no evidence that Moving Defendant designed or manufactured the cup and lid at issue.

77. Plaintiff failed to establish that the tea, cup and lid individually, or as a group, malfunctioned. As discussed in greater detail in the Daubert Motion, Plaintiff cannot establish that the temperature of the tea exceeded or varied from industry standards, and there is no evidence that double cupping contributed to the subject incident.

78. Plaintiff cannot establish the requisite elements of breach of warranty of merchantability, and as such, Count IV of the Complaint must be dismissed.

### E. Plaintiff Has Not Identified a Particular Purpose

79. Count V of Plaintiff's Complaint alleges breach of warranty of fitness for a particular purpose. See Exhibit "A."

80. UCC §2-315, addressing the standard for this cause of action, provides: "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." See UCC § 2-315.

81. In Pennsylvania, an implied warranty of fitness for a particular purpose is breached when a "seller", on whose skill and judgment a buyer relies and who has reason to know, at the time of contracting, the particular purpose for which the goods are required, fails to provide goods that perform to the specific use contemplated by the buyer. Gall v. Allegheny County Health Department, 521 Pa. 68, 555 A.2d 786 (1989).

82. A particular purpose differs from an ordinary purpose. Id.; see also UCC §2-315.

83. 13 Pa.C.S.A. §2-315 provides that where the seller at the time of contracting has reason to know:

> 1. any particular purpose for which the goods are required; and
>
> 2. that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods

there is an implied warranty that the goods shall be fit for such purpose. See also Oppenheimer v. York International, 2002 WL 31409949 (Pa.Com.P. 2002)

84. Comment 2 of the statute provides:

> 2. A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question . . .

85. The Complaint in the instant matter fails to identify a "particular purpose." Rather, the Complaint identifies ordinary purposes for which a cup and lid are typically utilized.

86. The Complaint identifies the "particular purpose" as follows: "grasping, handling, transporting in Plaintiff's car and consumption in Plaintiff's car and home." See Exhibit "A."

87. There is nothing in the Complaint that identifies a purpose other than a normal purpose for which a cup and lid are utilized.

88. Moreover, there is no evidence of record that Plaintiff communicated a particular purpose to the barista, or that she received advice or direction from a barista regarding the suitability of the cup or lid for the alleged "particular purpose."

89. As there is no factual or legal basis to support Count V of Plaintiff's Complaint alleging breach of warranty of fitness for a particular purpose, that cause of action must be dismissed.

**WHEREFORE**, Moving Defendant Starbucks Corporation respectfully requests that this Honorable Court enter an Order dismissing Plaintiff's claims against Starbucks Corporation, in their entirety, with prejudice.

Respectfully submitted,

CIPRIANI & WERNER, P.C.

By: __/s/ Salvatore A. Vilardi_____
Salvatore Vilardi, Esquire
PA ID# 84718
Danielle Van Buren, Esquire
PA ID# 325776
450 Sentry Parkway, Suite 200
Blue Bell, PA  19422
(610) 567-0700 telephone
(610) 567-0712 facsimile
*Attorneys for Defendant*
*Starbucks Corporation*

Date:  9/3/2019