IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN MANERI | : CIVIL ACTION |
| Plaintiff | : |
| | : No. 2:17-cv-03881 |
| v. | : |
| STARBUCKS CORPORATION | : |
| Defendant | : |

**REPLY OF PLAINTIFF, KAREN MANERI TO THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, STARBUCKS CORPORATION**

Plaintiff, Karen Maneri, by and through counsel, Christian Hoey, Esquire files the within Reply to the Defendant, Starbucks Corporation's Motion for Summary Judgment and in support thereof, avers as follows:

**I.    PROCEDURAL HISTORY**

1. Admitted. Plaintiff initiated the within action by Complaint on or about August 9, 2017. (A true and correct copy of Plaintiff's Complaint is attached hereto as Exhibit "A").

2. Admitted. By way of further answer, without waiving the foregoing, the parties consented to proceed before a United States Magistrate Judge and approval of same was signed by the Honorable Berle M. Schiller on May 13, 2019. (Please see Consent to Proceed Before a United States Magistrate Judge attached hereto as Exhibit "B").

3. Denied as stated. It is admitted only that the Defendant filed an Answer with Affirmative Defenses on or about September 27, 2017.

4. Denied as stated. It is admitted only that discovery is complete and the Defendant has filed a Motion for Summary Judgment within the time allotted by the Court.

1

5. Denied as stated. It is not possible to file a Motion for Summary Judgment and a "Daubert" Motion "in conjunction". To the extent that the Defendant relies upon a ruling by this Court on its Daubert Motion seeking to preclude Plaintiff's liability expert, Jeffrey C. Lolli, Ed. D., said position is misplaced and inconsistent with the Rules of Civil Procedure which govern a Motion for Summary Judgment. (F.R.C.P. 56). On the Motion for Summary Judgment, the Court must determine whether the evidence shows that "there is no genuine issue as to any material fact" and that the moving party is entitled to judgment as a matter of law. *Abraham vs. Raso*, 183 F.3d 279 (3d Cir. 1999). This Honorable Court must view the facts of this matter in a light most favorable to the non-moving party - the Plaintiff. *Acumed, LLC vs. Advanced Surgical Services, Inc.*, 561 F.3d 199 (3d Cir. 2009). In the instant matter, the Defendant seems to hinge its Motion for Summary Judgment upon this Court's exclusion of Plaintiff's liability expert, Jeffrey C. Lolli, Ed. D. Said request is in consistent with the Federal Rules of Civil Procedure, in particular F.R.C.P. 56 which has no "contingency" language within it. It remains the moving party's burden to establish that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. At this stage of the litigation, this Court has not excluded any opinions of Mr. Lolli and therefore, the Defendant must be precluded from arguing a contingent theory of summary judgment that does not exist in the Rules of Civil Procedure or within the case before the Court.

6. Denied. Please answer to Paragraph Five (5) incorporated herein in its entirety.

## II. STATEMENT OF FACTS

### A. COMPLAINT

7-10. Denied. The allegations in Plaintiff's Complaint are in writing, speak for themselves and are incorporated herein their entirety by way of incorporation of Exhibit "A" in its entirety into

2

the within pleading. To the extent that Paragraphs Seven (7) through Ten (10) of the Defendant's Motion for Summary Judgment are inconsistent with Plaintiff's Complaint, they are specifically denied and at issue. By way of further answer, without waiving the foregoing, Plaintiff alleges that she sustained severe third degree burns as a result of the Defendant's failure to affix a lid upon the tea product purchased by Plaintiff at the Starbucks location at 851 W. Lancaster Avenue in Devon, Pennsylvania on or about January 8, 2017. Further, Plaintiff alleges that the contents of the cup was extremely hot, dangerous and presented a grave risk to the well-being of Plaintiff which manifested in the third degree burns sustained on Plaintiff's leg once the contents of the cup spilled as a direct and proximate result of the negligent placement of the lid on the "double cup" presented to Plaintiff. Finally, Plaintiff complains that the employees at the Devon, Pennsylvania Starbucks violated their own standard operating procedures by "doubling" the cup which prevented the lid from being properly affixed which in turn caused same to come free from the cup and spill the contents of the tea drink onto Plaintiff's leg. Plaintiff's complaint asserts five (5) independent causes of action: vicarious liability, negligence, products liability, breach of warranty of merchant ability and countability and breach of warranty of fitness for a particular purpose. (Please see Plaintiff's Complaint as Exhibit "A" attached hereto and incorporated herein).

    **B.    EXPERT REPORT - JEFFREY LOLLI, Ed.D.**

11. Admitted. A true and correct copy of the expert report of Jeffrey Lolli, Ed.D. is attached hereto as Exhibit "C". Further, a true and correct copy of Dr. Lolli's curriculum vitae is attached hereto as Exhibit "D".

12. Denied. The averments contained in the Defendant's Motion at Paragraph Twelve (12) are specifically denied. By way of further answer, without waiving the foregoing, the entirety of the Dr. Lolli report, Exhibit "C", is incorporated herein by reference. Dr. Lolli expresses

multiple opinions concerning the deviations of the duty of care perpetrated by the Starbucks Defendant. They are set forth below:

1. The contents of Plaintiff's tea drink exceeded acceptable temperatures and the temperatures established in the various Starbucks Standard Operating Procedures and Manuals;

2. The Starbucks employees breached their own standard operating procedures by doubling Plaintiff's cups in an effort to reduce heat exposure to the Plaintiff which in turn, caused a disruption in the ability to properly seal the drink with a lid;

3. The Starbucks Defendant and its employees violated their own standard operating procedures and operations manuals by failing to properly record and process Ms. Maneri's serious complaints which were raised, in-person, at the Devon Starbucks location by the Plaintiff herself shortly after sustaining severe third degree burns;

4. The Starbucks employees negligently fitted Ms. Maneri's tea drink with a lid which was never properly secured until it finally displaced at the home of Plaintiff, just five (5) minutes after she departed the drive-thru window at the Devon, Pennsylvania Starbucks location. (Please see Exhibit "C" at pp. 8-9).

In summary, it is Dr. Lolli's opinion, within a reasonable degree of professional certainty, that serving Ms. Maneri's tea drink in a double cup, with an inappropriately fastened lid, at an extreme temperature which required double cupping, violated Starbucks duty of care to present a safe and secure product to Plaintiff on January 8, 2017.

13. Denied. It is denied that Dr. Lolli is unqualified to express the opinions within his report. Attached hereto as Exhibit "D" is the curriculum vitae of Dr. Lolli. In the sixteen (16) page professional resume, Dr. Lolli outlines his extensive food and beverage professional employment experience, his extensive refereed pages, presentations and conference experience, as well as his extensive academic experience. Importantly, for purposes of the

4

within Motion for Summary Judgment, this Honorable Court must receive Dr. Lolli's uncontroverted opinions as fact. It should be noted that at no time during the course of the litigation, and within the Court ordered case calendar did the Defendant produce a liability report defending the actions of its employees. As such, Dr. Lolli's expert opinions are the only duty of care opinions rendered within the instant matter. The Defendant does nothing to refute Dr. Lolli's opinions in the within Motion for Summary Judgment and relies, in the alternative, upon a "contingency" argument that would require this Court to exclude, entirely, the opinions of Dr. Lolli in the hopes that the Defendant's Motion for Summary Judgment would therefore be granted. As noted above, there are no rules for such a contingency within the Federal Rules of Civil Procedure, in particular, F.R.C.P. 56.

**C.     DEPOSITION TESTIMONY OF PLAINTIFF, KAREN MANERI**

14.   Denied. It is specifically denied that Plaintiff expected her tea to be extremely hot and dangerous. To the contrary, Ms. Maneri offered the following testimony regarding the Devon, Starbucks serving her a drink in an extremely hot and dangerous condition:

> Q:   All right. Had you ever complained before to Starbucks that the tea was too hot?
> A:   Not to - - to Starbucks, but I've complained the tea has been too hot.
> Q:   Who have you complained to?
> A:   Myself, or you know, whoever I was with.
> Q:   And how often does that happen?
> A:   I think their tea is always too hot.

(Please see deposition transcript of Karen Maneri attached hereto as Exhibit "E" at p. 22).

Additionally, Ms. Maneri offered the following testimony regarding the dangerous manner in which Starbucks serves their tea product:

> Q:   We've already agreed, ma'am, that before this accident you felt the tea at Starbucks was too hot?
> A:   Not every time. Probably occasionally. I don't honestly remember when - - times when the tea was hot - - was too hot. I don't know too hot - - it's hot tea, it's going to be hot, so . . .

(Please see deposition transcript of Karen Maneri attached hereto as Exhibit "E" at pp. 23-24).

5

Indeed, Ms. Maneri testified on at least two (2) occasions that she received tea products from the Devon, Starbucks that were just too hot. Importantly, Devon employee, Bryn Karr testified that she was unaware of when the Bunn Unit (machine that dispense hot water for tea) was last calibrated, nor did she know of any protocol for periodic tests of the water temperature or ongoing preventative maintenance of the Bunn Unit to ensure it was properly calibrated so as to avoid heating water for tea beyond acceptable temperatures. (Please see Exhibit "F" - Karr deposition transcript at pp. 25-33). It should be noted, that Ms. Karr was produced for deposition as a corporate designee. As such, Starbucks is bound to the deposition testimony of Ms. Karr at trial.

15. Denied. The photographs attached to Movant's Motion for Summary Judgment at Exhibit "F" demonstrate that the warning on the drink lid stated the following:

    "CAUTION CONTENTS HOT".

    The second photograph depicts the warning contained at the bottom of the cup which was obscured by a label placed on the cup by the Starbucks employee. Nevertheless, Starbucks is not exonerated by placing warnings on its cups. As noted above, Starbucks was unable to provide any calibration documents or evidence through its corporate designee. As such, the Starbucks Defendant is unable to represent to the Court that the contents of Plaintiff's tea was not overheated and provided to Plaintiff in a dangerous condition.

16. Admitted.

17. Denied. The warning contained in Movant's Exhibit "E" is obscured by a sticker placed on the cup by the Starbucks employee.

18. Denied. It is specifically denied that Ms. Maneri had "very little recollection of the particulars" pertaining to the purchase and handling of her cup of tea by and between herself and the Starbucks employees on January 8, 2017. To the contrary, she offered the following testimony:

6

> Q: Okay. I'd like you to walk me through your recollection of your purchase of your tea from the time you ordered it to the time that you drive out of the lot.
> A: Okay. It's a drive-thru. So I ordered, my recollection, paid for it with my debit card, he handed me the tea, and immediately put it in my cup holder. That's it - - that's all.

(Please see deposition transcript of Karen Maneri attached hereto as Exhibit "E" at p. 29).

Additionally, Ms. Maneri was able to identify how she paid for the tea, how she pulled up to the drive-thru window, the gender and race of the Starbucks employee who handed her the drink and the manner of exchange of the drink by and between herself and the Starbucks employee. (Please see Exhibit "E" at pp. 28-31). As for how she received the cup and where she placed her drink, Ms. Maneri offered the following testimony:

> Q: And do you remember placing the cup in the cup holder that day?
> A: I did put the cup in the cup holder that day.

(Please see deposition transcript of Karen Maneri attached hereto as Exhibit "E" at p. 36).

19-26. Denied as stated. The testimony of Plaintiff as captured in Paragraphs Nineteen (19) through Twenty-six (26) of the Defendant's Motion for Summary Judgment are likewise contained within the deposition transcript of Karen Maneri attached hereto as Exhibit "E" and incorporated herein in its entirety. To the extent that the averments differ from, vary from or are contrary to said averments, they are specifically denied.

27. Denied. It is specifically denied that Plaintiff has no facts to support her claim that the failure of the lid to remain in place was the result of the actions or omissions of Starbucks and its employees. To the contrary, attached hereto as Exhibit "C" is the expert report of Jeffrey Lolli, Ed.D. which is incorporated in its entirety herein. Moreover, Plaintiff advanced several theories of negligence pertaining to the conduct of the Starbucks employees. First, Plaintiff argues that the contents of the tea product was too hot and produced to Plaintiff in a dangerous condition. In support of said claim, this Honorable Court is directed to the deposition testimony of Starbucks corporate designee, Bryn Karr who testified as follows:

7

> Q: Are the machines calibrated - - are these machines that warm the water for tea products calibrated to reach a particular temperature?
> A: They are preset to reach 200 degrees.
> Q: Who presets those?
> A: The company, when opening the store.
> Q: The company Starbucks or the company Bunn?
> A: I'm not sure. I believe it's a Starbucks standard.
> Q: All right. And do you know when it was that the machine that was used to heat the water in this case was last calibrated?
> A: I do not.
> Q: Do you know if it was functioning normally that day?
> A: I do not.

(Please see deposition transcript of Bryn Karr attached hereto as Exhibit "F" at pp. 28-29).

Additionally, this Honorable Court is referred to the testimony of Ms. Maneri where she testified that on many prior occasions, she received tea from the Devon, Starbucks which was too hot, and in her opinion not safe for consumption. She offered the following testimony:

> Q: All right. Had you ever complained before to Starbucks that the tea was too hot?
> A: Not to - - to Starbucks, but I've complained the tea has been too hot.
> Q: Who have you complained to?
> A: Myself, or you know, whoever I was with.
> Q: And how often does that happen?
> A: I think their tea is always too hot.

(Please see deposition transcript of Karen Maneri attached hereto as Exhibit "E" at p. 22).

Additionally, Ms. Maneri offered the following testimony regarding the dangerous manner in which Starbucks serves their tea product:

> Q: We've already agreed, ma'am, that before this accident you felt the tea at Starbucks was too hot?
> A: Not every time. Probably occasionally. I don't honestly remember when - - times when the tea was hot - - was too hot. I don't know too hot - - it's hot tea, it's going to be hot, so . . .

(Please see deposition transcript of Karen Maneri attached hereto as Exhibit "E" at pp. 23-24).

Finally, this Court is respectfully directed to the photographs of Ms. Maneri's third degree burns which are attached hereto as Exhibit "G". The demonstrable evidence of the intensity of the heat of Ms. Maneri's tea product is quite evident in the photographs of her third degree burns.

8

In addition to the extreme and dangerous heat of the Starbucks product, Plaintiff next avers that the Defendant's employees violated their own standard operating procedures when they used a "double cup" to house the contents of Ms. Maneri's tea drink. Attached hereto as Exhibit "H" is the Starbucks Policy specifically instructing Starbucks employees not to "double cup" a Venti drink. (Please see Exhibit "H"). Ironically, the Starbucks employees testified that in addition to affixing a cardboard sleeve on tea products, they, at the Devon, Pennsylvania, Starbucks likewise "double cup" the Venti product because the tea is too hot. Corporate designee, Karr offered the following testimony:

> Q: What is the purpose of double cupping a Venti cup?
> A: There could be multiple purposes. As far as the barista is concerned, some see it as an extra layer of protection against the heat . . .

(Please see deposition transcript of Bryn Karr attached hereto as Exhibit "F" at pp. 22-23).

Ms. Karr offered the following testimony regarding Starbucks policy for "double cupping" Venti cups:

> Q: Okay. Now, with respect to the two cups, is there a written policy and procedure regarding the use of two cups?
> A: There is. It states that they should not be used for anything other than short cups, which sleeves do not fit on; however, we see as it an extra layer of protection occasionally, and its not specifically forbidden.

(Please see deposition transcript of Bryn Karr attached hereto as Exhibit "F" at p. 12).

Devon, Pennsylvania Starbucks employee, Andrew Reusche offered the following testimony regarding the use of "double cups" and cardboard sleeves for Venti tea drinks as follows:

> Q: Hot water and tea products require double cupping; is that your understanding?
> A: Well, specifically teacups.
> Q: Okay. So if it's a hot tea drink, its your understanding that the policy at Starbucks is to require double cupping and a sleeve; is that right?
> A: That is how I was trained.
> Q: Why is that the policy, if you know?
> A: It is my belief that it is to further insolate the drink.
> Q: To prevent the hand from being burned by the cup?
> A: Through the cup.
> Q: Okay. Is it your understanding that by providing a double cup and a sleeve, that will minimize the heat that is transferred from the - -

9

> A: Yes. Sorry.
> Q: Minimize the heat that's transferred from the internal cup to the hand holding the drink?
> A: Yes.

(Please see deposition transcript of Andrew Reusche attached hereto as Exhibit "I" at pp. 16-17).

The above testimony is important for two (2) reasons: first, the Starbucks employees routinely violate the standard operating procedures which forbid double cupping the Venti drink; second, the admission of the Starbucks employees regarding the extreme heat of their tea drinks which requires pouring the tea into a single cup, putting that single cup into another single cup ("double-cupping") and the affixing a cardboard sleeve to the outside of the drink. By their own admissions, they violate their own standard operating procedures to accommodate the extremely hot and dangerous drinks they provide the customers just like Ms. Maneri.

Finally, a review of Dr. Lolli's report indicates that the "double-cupping" in combination with the negligent placement of the lid by the Starbucks employee, caused the lid to free itself from the cup, spilling the extremely hot contents of the tea drink onto the leg of Ms. Maneri. (Please see expert report of Dr. Lolli attached hereto as Exhibit "C" at pp. 7-9).

As such, the suggestion that Plaintiff "has not facts to support her claim that the subject incident occurred at a result of the acts or omissions of any Starbucks store partner" is misplaced, unfounded and certainly not supported by the relevant facts, deposition testimony, corporate designee deposition testimony, written policies of Starbucks and the expert report of Jeffrey Lolli, Ed.D.

### III. SUMMARY JUDGMENT STANDARD

28-31. Summary Judgment is warranted when the Movant establishes that there is no genuine issue of material fact and the Movant is entitled to judgment as a matter of law. F.R.C.P. 56; *Schaar vs. Lehigh Valley Health Services, Inc.*, 598 F3d 156 (3d Cir. 2010). A fact is "material" under F.R.C.P. 56 if it's existence or non-existence might impact the outcome of the suit under the applicable substantive law. *Santini vs. Fuentes*, 795 F.3d 410 (3d Cir.

10

2015). A dispute over a material fact is "genuine" if a reasonable jury could return a verdict for the non-moving party. *Santini*, 795 F.3d 410 (3d Cir. 2015) quoting *Anderson vs. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

The moving party bears the initial burden to identify "specific portions" of the record that establish the absence of a genuine issue of material fact. *Santini*, 795 F.3d at 416, citing, *Celotek Corp. vs. Catrett*, 477 U.S. 317 (1986). If, and only if, the moving party satisfies its burden, the burden then shifts to the non-moving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industries, Co. vs. Zenith Radio Corp.*, 475 U.S. 574 (1986); *See also*, F.R.C.P. 56(e). The facts must be viewed in a light most favorable to the non-moving party and where there is doubt, entry of an order in favor of the non-moving party is warranted. *Acumed, LLC vs. Advances Surgical Services, Inc.*, 561 F. 3d 199 (3d Cir. 2009), *Lexington Insurance Company vs. Western Pa. Hospital*, 423 F. 3d 318 (3d Cir. 2005).

IV. **LEGAL ARGUMENT**

32-33. Denied as stated. It specifically denied that Plaintiff requires expert testimony to establish that the Defendant's employees failed to properly affix the lid on Plaintiff's cup, causing same to dispense of its contents onto the leg of Plaintiff. To the contrary, the conduct, or lack thereof, of the Starbucks employees is so obvious that expert testimony is not required to assist the fact finder as it pertains to the negligent placement of the lid on Plaintiff's cup. To the extent that expert testimony is required to establish the excessive and dangerous temperature of the tea product, the standards of Starbucks precluding "double-cupping" and how that "double-cupping" would effect the placement of the lid on the Maneri drink, Plaintiff has produced the expert report of Jeffrey Lolli, Ed.D. (Exhibit "C").

34. Plaintiff withdrawals Count Three (3) - Product Liability and therefore Paragraph Thirty-four (34) is moot.

35. It is admitted only that the Defendant has filed a "Daubert Motion" seeking to preclude Jeffrey Lolli, Ed.D. It is specifically denied that Dr. Lolli lacks the expertise and qualifications to express opinions regarding industry standards and opinions related to the negligence of the Starbucks employees. Attached hereto as Exhibit "D" is the curriculum vitae of Dr. Lolli which reflects his vast industry experience, qualifications, expertise which all support his ability to render opinions to jury in this matter.

36. Denied. Again, this Defendant makes it Motion for Summary Judgment "contingent" upon the expert testimony of Dr. Lolli. No such "contingency" language exists in F.R.C.P. 56. To the contrary, this Court must accept as true, all uncontroverted facts and opinions as true on behalf of the non-moving party. Importantly, this Court should not the failure of the Defendant to describe, in any regard, those facts and opinions that it believes Dr. Lolli cannot render to the jury. Dr. Lolli renders many opinions critical of the Starbucks Defendant, its employees and their combined failure to follow their own policies and procedures which caused the accident to occur in the first place. Bald assertions of Dr. Lolli's "lack of qualifications" do not suffice, nor does Rule 56 permit contingency arguments to be made in support of a movant's Motion for Summary Judgment. As such, the Motion for Summary Judgment must be denied.

37. Denied at stated. There most certainly is a basis for recovery under a theory of vicarious liability against Starbucks in that Plaintiff establishes through its expert report and discovery produced to date, that the moving Defendant committed a tortious act or omission which resulted in Plaintiff's injuries. (Please see expert report of Dr. Lolli attached hereto as Exhibit "C" along with the deposition testimony of Starbucks corporate designee, Bryn Karr as Exhibit "F" and Andrew Reusche Exhibit "I", set forth above).

38. Admitted.

39. Admitted.

40. Denied. The averments contained in the Defendant's Motion at Paragraph Forty (40) are specifically denied. By way of further answer, without waiving the foregoing, the entirety of the Dr. Lolli report, Exhibit "C", is incorporated herein by reference. Dr. Lolli expresses multiple opinions concerning the deviations of the duty of care perpetrated by the Starbucks Defendant. They are set forth below:

   1. The contents of Plaintiff's tea drink exceeded acceptable temperatures and the temperatures established in the various Starbucks Standard Operating Procedures and Manuals;

   2. The Starbucks employees breached their own standard operating procedures by doubling Plaintiff's cups in an effort to reduce heat exposure to the Plaintiff which in turn, caused a disruption in the ability to properly seal the drink with a lid;

   3. The Starbucks Defendant and its employees violated their own standard operating procedures and operations manuals by failing to properly record and process Ms. Maneri's serious complaints which were raised, in-person, at the Devon Starbucks location by the Plaintiff herself shortly after sustaining severe third degree burns;

   4. The Starbucks employees negligently fitted Ms. Maneri's tea drink with a lid which was never properly secured until it finally displaced at the home of Plaintiff, just five (5) minutes after she departed the drive-thru window at the Devon, Pennsylvania Starbucks location. (Please see Exhibit "C" at pp. 8-9).

   In summary, it is Dr. Lolli's opinion, within a reasonable degree of professional certainty, that serving Ms. Maneri's tea drink in a double cup, with an inappropriately fastened lid, at an extreme temperature which required double cupping, violated Starbucks duty of care to present a safe and secure product to Plaintiff on January 8, 2017.

41. Denied.

   1. Plaintiff's excessive heat theory is a viable theory of recovery.

13

1. **EXCESSIVE HEAT OF DRINK CAUSED INJURY**

42. Denied as stated. It is admitted only that one (1) of Dr. Lolli's theories regarding the negligent conduct of Starbucks and its employees, relates to claim that the tea served to Ms. Maneri was excessive hot and dangerous. (Please see Exhibit "C" at pp. 6-9).

43. Denied as stated. Dr. Lolli cites the Starbucks Teavana Tea Manual at page sixteen (16) which indicates that temperature dispensed from the heating unit is approximately 190 degrees to 200 degrees Fahrenheit. (Please see Teavana Manual attached hereto as Exhibit "J" at p. 16). He also cites the deposition testimony of Starbucks corporate designee, Bryn Karr who indicated that the boiler at the Devon, Starbucks is programed to heat water to 200 degrees Fahrenheit. Importantly, as set forth above, and incorporated herein, corporate designee Karr testified that she does not know when the boiler machine was last calibrated and wether or not said device producing water at pre-calibrated temperatures at the time of the Maneri incident. More importantly, the testimony of Mr. Reusche set forth above, indicates that Starbucks employees were well aware of the extreme heat of Devon, Starbucks tea products and decided to, in violation of Starbucks policies, to double-cup Venti tea drinks and include a cardboard sleeve because of the extreme heat. That testimony was likewise corroborated by a Starbucks employee, Idunn Gisladottir which is attached hereto as Exhibit "K". Ms. Gisladottir testified as follows:

> Q: Okay. All right. Do you understand Starbucks to have a policy regarding double cups?
> A: When I was trained, I was verbally told that we were supposed to double cup anything with hot water, most importantly teas and also short cups, because the sleeves cannot fit on them.
> Q: Okay. Why were you that double cupping was necessary for hot drinks?
> A: Because of the water that comes our of the boiler.

(Please see deposition transcript of Idunn Gisladottir attached hereto as Exhibit "K" at p. 10).

Additionally, Ms. Gisladottir testified as follows:

> Q: Okay. So Amber trained you that any hot drink would require a double cup, and the

14

        reason was because of the water that came out of the boiler?
A:     Yes.

(Please see deposition transcript of Idunn Gisladottir attached hereto as Exhibit "K" at p. 11).

Of course, the testimony of Ms. Maneri, set forth above, is incorporated herein in its entirety. Notably, Ms. Maneri testified that she, on several occasions, received tea from the Devon, Starbucks which was extremely hot and in her mind, dangerous to drink at that temperature. (Please see Plaintiff's answer to Paragraph Fourteen (14) set forth above).

44.     Denied.

45-46. Denied. It is specifically denied that Dr. Lolli does not cite to industry standards in this report. To the contrary, this Court is respectfully directed to page six (6) - seven (7) of Dr. Lolli's report attached hereto as Exhibit "C"). Within those pages, Dr. Lolli certainly reviews industry standards, product standards and burn foundation standards. The Defendants averments to the contrary are simply wrong. Moreover, the Defendant seems to create a legal standard for expert testimony in that the Defendant suggests to the Court, without any substantiation, that an expert must identify "industry standards" in order to establish a breach of the duty of care. No such evidentiary standard exists and the Defendant has cited no support for its averment that said requirement is necessary.

47.     Denied. The Defendant references "numerous legal decisions throughout the country" without citing this Court to same. As such, Plaintiff can neither admit, nor deny said averments.

48.     Denied as stated. The holding in *Huppe*, is in writing and speaks for itself. Importantly, the *Huppe* Court did not conclude that hot coffee, in and of itself is not actionable should it cause injury. To the contrary, the *Huppe* Court looked for evidentiary facts which establish that the coffee served by the Defendant in *Huppe* was defective or unreasonably dangerous by virtue of being hotter than it should have been. In the instant matter, Plaintiff offers this

Court the testimony of Ms. Maneri wherein she testified that on several occasions, she has received extremely hot beverages from the Devon Starbucks which she considered dangerous and not readily consumable. Moreover, this Court is directed to the deposition testimony of Starbucks corporate designee, Bryn Karr who testified that she has no idea when the water boiler was last calibrated or if it in fact was calibrated correctly. Finally, this Court is respectfully directed to the photographs attached hereto as Exhibit "G" which demonstrate the presence of third degree burns on the leg of Ms. Maneri. The objective evidence is indisputable. The tea drink which spilled upon Ms. Maneri's leg was extremely hot, dangerous and caused serious bodily injury to Ms. Maneri. That tea product, purchased at the Devon Starbucks, was similar in feel and temperature to those cups of tea purchased by Ms. Maneri on prior occasions which she deemed to dangerous to drink. Finally, this Court is directed to the incontroverted testimony of three (3) Starbucks employees (set forth above) who each testified that their tea products were so hot, that they had to violate their own standard operating procedures and serve them in double cups with a cardboard sleeve attached thereto. Such an necessity is direct evidence that the Starbucks employees were serving excessively hot drinks, knew it, and sought to protect their patrons by violating their own policies and using "double cups" to prevent purchasers such as Ms. Maneri from being burned by the contents. Clearly, the *Huppe* Court would have no difficulty denying the Defendant's Motion for Summary Judgment and leaving for the jury the question of whether or not tea water in Ms. Maneri's January 8, 2017 drink was indeed excessively overheated, dangerous for consumption and presented to Ms. Maneri in violation of Starbucks duty of care to provide a safe and consumable product.

49. Denied. Please see Plaintiff' answer to Paragraph Forty-eight (48) set forth above.

50. Denied. Please see Plaintiff's answer to Paragraph Fourteen (14) set forth above.

51. Denied. Please see Plaintiff's answer to Paragraph Forty-eight (48), the expert report of Dr. Lolli and the deposition testimony of Ms. Reusche, Ms. Gisladottir and Ms. Karr set forth herein.

52. Denied. Please see Plaintiff's answer to Paragraph Forty-eight (48) set forth above.

53. Denied. It is respectfully requested this Honorable Court deny the Defendant's Motion to Dismiss Plaintiff's Complaint as it relates to the excessive temperature of Ms. Maneri's tea drink.

### 2. Double cupping caused Plaintiff's injuries.

54. Admitted.

55. Denied. Please see the curriculum vitae of Dr. Lolli attached hereto as Exhibit "D". Noted therein is Dr. Lolli's extensive experience in the hospitality industry, and particular, the food and beverage industry.

56. Denied. Dr. Lolli's opinions are not just "his own". Rather, Dr. Lolli cites to Starbucks own standard operating procedures and manual which expressly forbid, "double cupping" a Venti tea drink.

57-60. Denied. In these particular paragraphs, the Defendant again raises a Daubert Motion within his Motion for Summary Judgment. The Defendant produced no liability report defending the actions and inactions of the Starbucks employees. Therefore, the Plaintiff's report is now uncontroverted and must be accepted as true in the context of a Motion for Summary Judgment. The Defendant may not make "contingent" arguments within a Motion for Summary Judgment. Rather, the Defendant is required to cite this Court to any necessary facts or Plaintiff's failure to produce facts and expert opinions in support of its Motion for Summary Judgment. In this case, the Defendant simply attacks the well reasoned and well supported opinions of Dr. Lolli without producing its own experts to refuse same.

### 3. PRODUCT LIABILITY CLAIM - WITHDRAWN

61-71. Plaintiff withdrawals her product liability claim.

### 4. BREACH OF WARRANTY OF MERCHANTABILITY

72. Admitted.

73-78. Denied. If a seller is a merchant for goods of a particular kind, implied in every contract for sale is a warranty that the goods;

1. will pass without objection in the trade under the contract description;
2. and the case of fungible goods, are of fair average quality within the description;
3. are fit for the ordinary purposes for which such goods are used;
4. run, within the variations permitted in the agreement, of even kind, quality; and quantity within each unit and among all units involved;
5. are adequately contained, packaged and labeled as the agreement may require; and
6. conform to the promises or affirmations of fact contained on label, if any.

13 Pa. C.S. §2314

In Pennsylvania, an injured party suing a merchant in negligence must prove that the product received was defective, that the defect proximately caused the harm and that the Defendant failed to exercise due care in producing or supplying the product to Plaintiff. *Dambacher vs. Mallis*, 485 A.2d 408 (Pa. Super. 1984). In a strict liability action, Plaintiff need only prove that the product was defective and that defect caused the injury. *Shirk vs. Daisy Heddon*, 450 A.2d 615 (Pa. 1982). When the Plaintiff's cause of action is breach of the implied warranty of merchantability, the elements of liability are similar to a strict liability action. *Gumbs vs. International Harvester, Inc.*, 718 F.2d 88 (3d. Cir. 1983).

In the instant matter, Plaintiff produced the following evidence in support of her argument that the Starbucks Defendant produced to her a defective and dangerous product - excessively overheated tea - which spilled onto her leg and caused severe third degree burns as noted in Exhibit "G". That evidence includes the deposition testimony of Starbucks employees, Karr, Reusche and Gisladottir who each testified that they Starbucks employees were well aware of the excessive heat of their product and often times compensated for same by serving tea products in double cups with

sleeves on top of same. Moreover, corporate designee, Ms. Karr testified that she had no idea when the tea boiler was last calibrated and whether or not it was producing tea water which conformed to Starbucks policies and calibration assignments. Finally, the burns sustained by Ms. Maneri are demonstrative of a severe injury caused only by excessively overheated tea water. In support of said position, Plaintiff produced the medical expert report of Carl H. Manstein, M.D. (Please see Exhibit "L"). Therein, Dr. Manstein relates all of Ms. Maneri's severe burns to the dangerously overheated tea water. As such, Plaintiff respectfully requests this Honorable Court deny the Defendant's Motion as it pertains to Count IV of her Complaint.

### E.   PARTICULAR PURPOSE

79.   Admitted.

80-89. Plaintiff withdrawals Count V of her Complaint.

WHEREFORE, Plaintiff respectfully requests this Honorable Court deny the Motion for Summary Judgment of Defendant, Starbucks Corporation.

Respectfully Submitted:

Date: 9-24-19

_____
CHRISTIAN J. HOEY, ESQUIRE
Attorney for Plaintiff,
Karen Maneri