IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KAREN MANERI                                    :

                                                :      NO.   17-3881

              v.                                :

STARBUCKS CORPORATION STORE #1527    :


MEMORANDUM OPINION AND ORDERS

JACOB P. HART                                              DATE:   10/31/2019
UNITED STATES MAGISTRATE JUDGE


I.      FACTUAL BACKGROUND

Plaintiff, Karen Maneri, commenced this action by filing a Complaint in the Philadelphia

Court of Common Pleas on May 15, 2017, which was removed to this court on August 29, 2017.

Plaintiff asserted claims of negligence, product liability, and breach of warranty against

Defendant, Starbucks, for serving hot tea which spilled on Plaintiff after she purchased the tea at

Defendant's drive-thru window.  She alleges that after she purchased the tea and placed it into

her car's built-in cupholder, she drove home and as she turned into her driveway the lid popped

off, causing the tea to spill on her leg and resulting in severe burns.

The parties consented to proceed before the undersigned and approval of the Consent was

signed by the Honorable Berle M. Schiller on May 13, 2019.  (Doc. No. 17).  Currently pending

before this Court are Defendant's Motion to Exclude the Testimony of Plaintiff's Liability

Expert (Doc. No. 23) and Defendant's Motion for Summary Judgment (Doc. No. 24).  Plaintiff

has filed a Response to both Motions (Docs. No. 26, 27) and Defendant has filed Replies to

Plaintiff's Responses (Docs. No. 28, 29).

## II.    MOTION TO EXCLUDE TESTIMONY

### A.  Standard of Review

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The Supreme Court held in Daubert v  Merrell Dow Pharmaceuticals, Inc., that as "gatekeeper," the trial judge must ensure that expert testimony is both relevant and reliable.  Daubert, 509 U.S. 579, 589 (1993).  This basic gatekeeping obligation applies to all expert testimony, not only to "scientific" testimony.  Kumho Tire Co, Ltd. v. Carmichael, 526 U.S. 137, 147 (1999).

The Third Circuit has held that Rule 702 requires the proponent of the testimony to demonstrate by a preponderance of the evidence: (1) the proffered witness is qualified as an expert (2) the expert is testifying about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony will assist the trier of fact.  In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-743 (3d Cir. 1994); see also In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig., 858 F.3d 787, 792 (3d Cir. 2017).  The expert testimony must be "reliable," which means the opinion "must be based on methods and procedures of science rather than on subjective belief or unsupported speculation."  In re Paoli R.R. Yard Pcb Litig., 35 F.3d 717, 741 (3d Cir. 1993), quoting Daubert, 509 U.S. at 590.

To determine the reliability of the proposed evidence, the court may consider factors including:

(1) whether a method consists of a testable hypothesis;

(2) whether the method has been subjected to peer review;

(3) the known or potential rate of error;

(4) the existence and maintenance of standards controlling the technique's operations;

(5) whether the method is generally accepted;

(6) the relationship of the technique to methods which have been established to be reliable;

(7)     the qualifications of the expert witness testifying based on the methodology; and

(8)     the non-judicial uses to which the method has been put.

United States v. Mitchell, 365 F.3d 215, 235 (3d Cir. 2004), quoting Paoli, 35 F.3d at 742, n. 8.

The court will consider both academic training and practical experience to determine if the expert has "more knowledge than the average lay person" on the subject. Fedor v. Freightliner, Inc., 193 F.Supp.2d 820, 827 (E.D. Pa. 2002) (citing Waldorf v. Shuta, 142 F.3d 601, 627 (3d Cir.1998)). The specialized knowledge the expert possesses must relate to the area of testimony. Id. In addition to consideration of these factors as to reliability, the court must also consider "helpfulness", which has also been described as fit or relevance. Mitchell, 365 F.3d at 233.

B. Discussion

Starbucks moves to exclude the testimony of Plaintiff's expert, Jeffrey C. Lolli, Ed.D, CHE, CHIA. Defendant does not dispute that Lolli has education and experience in hotel and restaurant management. Lolli has a Bachelor of Science degree in Hotel and Restaurant Management, a Master of Science in Human Resources, and a Doctorate of Education in Higher

Academic Leadership.  He has over 20 years of experience in the hospitality industry working for companies such as Wyndham Hotels, Sands Casino Hotel and Harrahs Entertainment.  He has held management and supervisory positions in large hotels and casinos, including positions as Director of Hotel Operations, Director of Rooms, Director of Guest Services, Director of Housekeeping, Assistant Director, Food and Beverage, Food Court Manager, and Senior Food and Beverage Operations Analyst.  He also holds a certificate in food safety.  Lolli Report at 1.  However, as Defendant notes, he has not worked in a Starbucks or similar establishment.  He does not cite to or rely upon any food safety rules or regulations relevant to this case as a basis for his opinions. His opinions are not based on comparison with accepted industry standards and are not testable.  For the reasons that follow, I find that his opinions fail to satisfy the <u>Daubert</u> standard.

<u>Testimony that Tea was Excessively Hot</u>

As Defendant argues, Lolli does not set forth any materials which establish an industry standard in this case.  He also does not connect his opinions to any specialized training or knowledge regarding relevant standards.  Therefore, his opinion that the tea was "too hot" is based on his own personal opinion.  He does not reference any materials which set forth an industry standard for brewing and serving temperatures for tea.  Instead, he references Starbuck's manual which indicates this type of tea is brewed at between 190 to 200 degrees Farenheit; Laloganes and Schmid (2018) The Beverage Manager's Guide to Wines, Beers and Spirits, which he states indicates that teas, depending upon variety, require brewing temperatures ranging from 175 to 200 degrees Farenheit; and Keurig Brand Hot Beverage Brewer (2019), stating that the optimal temperature for brewing coffee, tea and hot cocoa is 192 degrees Farenheit.  He also cites a 2008 article by Brown and Diller which focuses on the preferred temperature at which to

serve coffee, which it states is 140 degrees +/- 15 Farenheit for a population of 300. The article does not focus on tea and does not set forth the industry standard for serving a hot beverage. (Doc. No. 23-9). Finally, he cites the Burn Foundation to set forth the temperature at which skin burns (ranging from 133 to 156 degrees Farenheit, depending on the time it is on the skin.) Lolli report at 6.

Plaintiff relies upon the following portion of Lolli's report in support of his finding that although the temperature is unknown, the tea was excessively hot:

> While the temperature of Ms. Maneri's Venti Mint Majesty Tea was unknown and not tested at any point from purchase to the period of its spilling on her leg, according to her doctor, she sustained severe second degree burns. Furthermore, the tea had some time to cool from the approximately five (5) minute drive to her home, especially since the ambient air temperature would have been cooler on January 8, 2017 when the incident occurred. However, since skin will start to burn at temperatures of 120 degrees Fahrenheit and above (Stipanuk 2015), based on the severity of Ms. Maneri's burns, it can be deduced that the tea temperature was well above this threshold; *and hence the tea was served well above recommended industry standards and norms. In this instance, Starbucks breached their duty of care to Ms. Maneri*.
>
> According to Bryn Karr (Starbucks corporate designee), she was unaware of when the Bunn Unit (machine that dispensed hot water) was last calibrated, nor does there seem to be any protocol for periodic tests of the water temperature or ongoing preventative maintenance (P.M.) of this unit to ensure it is calibrated to operate at the proper temperature, No calibration documents have been produced by Starbucks for analysis.

Lolli Report at 7 (emphasis added).

Lolli may not testify that the tea was "served well above recommended industry standards and norms" since he has not set forth any industry standards or recommended norms for the temperature at which hot tea should be served. Lolli's finding that the tea was "too hot" is based upon nothing more than the fact that Plaintiff was burned and the testimony that the employees "double cupped" the tea as an extra layer of protection against the heat. Lolli fails to set forth any evidence of an industry standard that tea should be served at a temperature below that which

would burn the skin if spilled.  In fact, the documents he references, including Starbuck's manual and the Keurig manual, indicate that tea should be brewed at a temperature in excess of that which would cause the skin to burn.

Furthermore, Lolli does not have any expertise which would allow him to opine as to the temperature of the tea based upon the injuries Plaintiff sustained.  In Plaintiff's response to the motion, Plaintiff directs the court to the photographs of the burn as "demonstrable evidence of the intensity of the heat of Ms. Maneri's tea product." (Doc. No. 26 at 10).  Clearly, Lolli is no more qualified to offer an opinion as to the correlation between the burn and the temperature of the tea than the jury would be.

<u>Calibration</u>

Lolli also references Bryn Karr's testimony that she was unaware of when the Bunn Unit (machine that dispensed hot water) was last calibrated and the fact that Starbucks did not produce any records regarding calibration.  However, he fails to offer any evidence of an industry standard or protocol requiring such calibration.  Therefore, this court will not allow Lolli to testify as to the alleged excessive temperature of the tea.

<u>Testimony that Double Cupping Impaired the Ability to Ensure Lid Was Properly Affixed</u>

Lolli's opinion that double-cupping prevented the lid from being secured properly is also not connected at all to his training or any industry standard set forth in his report.  As Defendant states, Lolli does not reference any industry standard regarding double cupping.  The only support he offers for his opinion is Starbuck's operating procedures, which provide that double cupping is not necessary for a venti-sized drink.  He notes that the procure provides that a short cup should be double cupped because the cup sleeve does not fit on the cup, but for tall, grande and venti-sized cups, they are not to be double cupped unless requested by the customer.

However, there is no indication that this standard is a safety precaution. In fact, Bryn Karr testified that she was unaware of any concerns Starbucks had regarding Venti cups being double cupped as it pertains to the integrity of the lid or that the policy was designed to prevent the lids from popping off. Dep. of Bryn Karr at 17:21-18:17. She testified that the purpose of the policy was to save resources. Id. at 16:21-24, 18:23-19:5. Andrew Reusche testified regarding his experience with double cupping and stated as follow:

> I believe there is no affect (sic) to it, being that the first cup and the second cup, as you can clearly see, do not touch each other. So there will be no affect whether it is one cup, two cups, three cups. The two cups don't touch each other, so they will not affect how the lid is placed on it.

Dep of Andrew Reusche at 19:7-16. Lolli does not indicate that he has any personal experience serving hot beverages which are double cupped and also fails to reference the testimony of the three Starbucks store partners with experience as baristas who testified that they always use double cups when serving tea and have had no problem securing the lids to double cupped beverages. While Plaintiff would be free to argue that Defendant deviated from its own operating procedures by double cupping a Venti-sized tea, there is no need for an expert to do this.

> Lolli's report includes the following:
>
> Andrew Reusche stated that no further safety training is provided for employees beyond initial new employee training. During initial training, employees are taught how to put a lid on a cup. Employees are taught to put the lid on and then check for security by going around the side of the lid with your finger to push up on the rim of the lid to make sure it is completely fastened to the rim of the cup-in essence a fitted connection. This policy is clear and straight forward with one cup. ***However, when there is one cup stacked inside another with two rims very close in proximity, this does not effectively allow someone's finger to fully get under the rim of the top cup to perform this action to ensure that the lid is securely fastened.***

Lolli report at 5. Lolli does not point to anything in Starbuck's recommended procedures regarding the proper fit of the lid being affected by double cupping. There is no indication that

the policy or procedure is at all related to safety or the fit of the lid, especially in light of the fact that the procedure specifically calls for double cupping "short" cups and also permits double cupping for any size beverage if requested by the customer. In fact, the first sentence under the heading "Cup Sleeves and Double-Cupping" indicates that the "[t]he following standards help reduce waste and ensure consistent execution from store to store." Starbucks Manual at 14.

Lolli also does not refer to any test he conducted to determine if double cupping prevents the lid from being secured or any specific methodology he used in reaching his conclusion, other than maybe running his finger along the rim of the cup. Nothing in Lolli's CV, in his report or even in Plaintiff's response to the motion indicates that he has any experience double-cupping beverages or any specialized knowledge in this area. As Defendant argues, Lolli's opinion is based upon nothing more than his own observations when examining the cups after being hired in this case. We agree that Lolli is not qualified to offer an expert opinion regarding the fit of the lid or the impact of double cupping,

Testimony that Based Upon Re-Creation, Plaintiff's Conduct Did Not Cause Incident

Lolli's conclusion that Plaintiff turning into her driveway in no way contributed to the dislodging of the lid of the cup is also clearly outside of his area of expertise. He has not provided any evidence demonstrating any personal knowledge or experience above that of a lay person in this area. Lolli offers an opinion based upon his personal inspection that turning into the driveway could not have "caused enough motion to dislodge the cup from the cup holder, causing it to tip over in the car." Lolli report at 8. He also provides measurements of the cup holder in her car and describes the fit of the cup in the holder, stating that the fit was "snug" and that he was only able to place "the tip of [his] index finger in the small space between the cup and the edge of the cup holder." Id. Clearly, these measurements or tests are not technical or

able to be repeated in any meaningful way. He also indicates that he "simulated a cup tip by pushing on the cup trying to make it tip over to see if the cup would fall out of the cup holder." Id. He states:

> It was pushed from all sides and due to the tight fit in the cup holder, a cup tip was unsuccessful. Furthermore, when the lid was securely fastened, during the simulation, the lid did not pop off with the motion of rocking the cup while in the cup holder, which would led one to believe that the only way the lid could pop off if it was never securely fastened to begin with at the time of purchase.

Id. at 8-9.

Lolli does not possess any specialized skills or knowledge which enables him to conduct such a "test" or reconstruction. Clearly, this "test" was not performed in a way that can be repeated or challenged. As Defendants note, he does not even indicate whether there was liquid in the cup. His opinion also does not address whether movement from Plaintiff driving may have caused motion to dislodge the lid or whether it impacted the quantity of tea which spilled or splashed out of the cup once the lid was off, but only addresses whether the cup itself could tip. Plaintiff even admits that Lolli's opinions are in no way scientific and that they are based upon observations that a lay person could make in the absence of expert testimony (Doc. No. 26 at 13-14). Therefore, the court will not allow Lolli's opinions in this regard to be admitted to the jury as "expert" evidence.

Lolli does not have any training or experience relevant to the alleged disruption in the ability to seal the drink with a lid caused by double cupping, the slope of Plaintiff's driveway, or the fit of the cup in her cup holder. These are matters that could have conceivably been addressed by an expert in engineering or accident reconstruction. As Plaintiff even admits, Lolli's opinions are based upon his personal observations, not specialized training. A jury would be able to consider the evidence and come to its own conclusion with regard to these issues, but

Lolli's opinions, which are not based upon any related specialized training may not be presented to the jury as "expert" opinions. The matters as to which he seeks to testify are those which lay persons on the jury could pass judgment without assistance from someone with specialized knowledge. See Pinkney v. Market Square Pic-A-Deli, 1991 WL 1011078, * 214 (Pa. Com. Pl. Oct. 29, 1991) (finding that service of hot beverages is an experience common to everyone and is within the knowledge of a lay person, not requiring expert testimony). Therefore, expert testimony is not admissible. See Foster v. Borough of Glenolden, 47 F.R.D. 276, 278 (E.D. Pa. 1969).

Other Opinions in Lolli's Report

Lolli will also not be permitted to testify regarding the other opinions he expresses in his report, which are unrelated to the cause of the incident. We agree that Starbuck's failure to create an incident report in this case is irrelevant to the issue of liability. Defendant's failure to document the incident, which was later reported by Plaintiff did not result in any injury to Plaintiff. Expert testimony would also not be necessary to establish that Defendant did not create such a report. As Defendant notes, Plaintiff was not injured on the Defendant's premises, but rather the injury occurred after she left and was in her own driveway. Therefore, it is not clear whether such a report would even be the type contemplated by Starbucks' procedures. Regardless, we agree that it is not relevant to Plaintiff's claims and Lolli's opinions on this issue will also not be permitted.

Lolli has also included the following in his report:

According to Rachel Maneri, daughter of Ms. Maneri, she had an issue with a lid being securely fastened on a previous visit to the Starbucks at University of Delaware. She purchased a tall hot chocolate. The employee placed the cup on the counter and Rachel picked it up and the lid started to slide off. Ensuring the

lid is securely fastened on a hot beverage cup is the responsibility of the employee and not the customer!

Lolli Report at 8. This statement is not at all relevant to the instant case since it involves Plaintiff's daughter and not Plaintiff and was at a different Starbuck's location. It also involves a different beverage, does not involve a double cup, and does not involve a drive-thru transaction. While this is also not an issue requiring an expert, this testimony coming from any witness is not relevant, would serve no purpose except to unfairly prejudice the jury, and will therefore, not be permitted.

C. Conclusion

For the reasons stated herein, this court will grant Defendant's motion to exclude the testimony of Dr. Lolli in its entirety. Plaintiff relies on the fact that his opinions are not "scientific", but are based upon extensive personal knowledge and experience in the food and beverage industry as set forth in his CV. However, the gatekeeping requirements of Daubert are still applicable even when the proposed testimony is not scientific. See Kumho Tire Co., 526 U.S. at 147. This court, exercising its gatekeeping powers as set forth in Daubert, does not find that Dr. Lolli's training or personal experience qualifies him to provide the expert testimony set forth in his report in this case. An appropriate order follows.

III. MOTION FOR SUMMARY JUDGMENT

A. Standard of Review

Summary judgment is warranted where the pleadings and discovery, as well as any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pr. 56. The moving party has the burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986). In response, the non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986); <u>Celotex Corp. v. Catrett</u>, <u>supra</u> at 325; <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989).

When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn from it in favor of the non-moving party. <u>Anderson v. Liberty Lobby</u>, <u>supra</u> at 255; <u>Tiggs Corp. v. Dow Corning Corp.</u>, 822 F.2d 358 , 361 (3d Cir. 1987). Nevertheless, Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u> at 323.

B. <u>Discussion</u>

Defendant seeks summary judgment dismissing all Counts of Plaintiff's Complaint. In Plaintiff's Response to the Motion for Summary Judgment, she withdrawals her claims of product liability (Count III) and breach of warranty for a particular purpose (Count V). Doc. No. 27 at 11, 18. Plaintiff opposes summary judgment as to Counts I (vicarious liability), II (negligence) and IV (breach of implied warranty of merchantability) of the Complaint.

<u>Counts I and II- Negligence</u>:

To succeed on a negligence claim, Plaintiff must prove that (1) Defendant owed a duty of care, (2) Defendant breached that duty, (3) Plaintiff incurred actual loss or damages, and (4) there is a causal connection between Defendant's breach and plaintiff's damages. <u>Freed v. Geisinger Medical Center</u>, 910 A.2d 68, 72 (Pa. Super. Ct. 2006). Under Pennsylvania law, a breach of a duty owed to a business invitee exists where the business: (1) knows or by exercise of reasonable care would discover the condition, and should realize that it involves unreasonable

risk of harm to invitees, (2) should expect that an invitee will not discover or realize the condition or fail to protect against it, and (3) fails to exercise reasonable care to protect the invitee against the condition. <u>Gutteridge v. A.P. Green Services, Inc.</u>, 804 A.2d 643, 656 (Pa. Super. 2002).

"[T]he mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence." <u>Moultrey v. Great A& P Tea Co.</u>, 422 A.2d 593, 596 (Pa. Super. 1980). Plaintiff must present some evidence that Defendant "has a hand in creating the harmful condition, or that he had actual or constructive notice of such condition." <u>Id.</u> at 595. "If a danger is obvious to an invitee (i.e., a reasonable person in the invitee's position, exercising normal perception, intelligence, and judgment would recognize the danger), the business cannot be held liable." <u>Freeman v. Ruby Tuesday</u>, Civ. A. No. 12-2558, 2013 WL 4082235, *3 (E.D. Pa. Aug. 12, 2013), citing <u>Palenscar v. Michael J. Bobb, Inc.</u>, 266 A.2d 478, 480 (Pa. 1970).

<u>Breach of Duty- Serving Excessively Hot Tea</u>:

Plaintiff alleges that Defendant breached a duty owed to Plaintiff by serving her excessively hot and dangerous tea. This district has recognized that according to Pennsylvania case law, the fact that a hot beverage such as tea is hot enough to cause second degree burns, should be obvious. <u>See</u> <u>Freeman v. Ruby Tuesday</u>, 2013 WL 4082235, at *3 (accepting that a reasonable person would know that hot coffee or tea is hot enough to cause a burn if spilled and finding that under Pennsylvania law no warning is required and the seller cannot be liable in negligence based on the temperature of the beverage)[1]. The district court in <u>Freeman v. Ruby</u>

---

[1]     Judge Rufe cited <u>Hurvitz v. Starbucks Corp.</u>, No. 06-0613, 2007 WL 5323787, at *1 (Pa. Com. Pl. Nov. 20, 2007) (granting summary judgment in favor of Starbucks where a customer was burned after she removed the lid

<u>Tuesday</u> accepted that Pennsylvania law does not impose a duty on restaurants to serve beverages at a temperature at which they cannot burn a customer, but denied summary judgment in that case because it involved injury caused by a hot food rather than a beverage, allowing the jury to determine if the temperature of bean dip was also open and obvious. <u>Id.</u> at *4. In this case the Plaintiff ordered and was served hot tea.

In addition, the cup and lid in this case both provided a warning that the contents were hot. Finally, in this case, Plaintiff also admits that she knew the tea was hot and according to her testimony she was even aware that the tea was "too hot". Plaintiff argues in the response to summary judgement that the tea which spilled upon her leg "was similar in feel and temperature to those cups of tea purchased by Ms. Maneri on prior occasions which she deemed to[o] (sic) dangerous to drink." (Response to SJ- Doc. No. 27-2 at 10). Plaintiff's testimony that the tea from this Starbuck's had previously been "too hot" demonstrates that she was aware of the alleged extreme temperature of the tea prior to this incident. <u>See</u> Dep. of Karen Maneri at 22: 3-23; 23:10-16. Since the danger was obvious no liability exists as a result of Plaintiff's claim of negligence based upon the allegation that the tea was too hot to be served.

---

from the cup and spilled the water for hot tea on herself), reversed on other grounds <u>"Hurvitz II"</u>, No. 1753 EDA 2007. The moving party in that case had cited the following Pennsylvania decisions finding that a reasonable person would know that hot water can cause a burn, and as such reasonable care must be used, noting that in each of these cases the court held that no liability stemmed from the service of a beverage at a temperature hot enough to cause second degree burns alone: <u>Climo v. Handee-Marts (Climo I)</u>, No. 95-10910, Doc. 15-8 (Pa. Com. Pl. Butler Co. June 28, 1999), aff'd, <u>"Climo II"</u>, No. 1289 WDA 1999, Doc. 15-9 (Pa. Super. Mar. 13, 2000), allocatur denied, 775 A.2d 800 (Pa. 2001) (Table); cf. <u>Vignoli v. King's Family Restaurants</u>, No. 449 WDA 1999, Doc. 15-10 (Pa. Super. Feb. 3, 2000), allocatur denied, 785 A.2d 90 (Pa. 2000) (Table); <u>Just v. 5072 Inc.</u>, 274 WDA 1999, Doc. 15-11 (Pa. Super. Oct. 21, 1999); <u>Hurvitz v. Starbucks Corp. (Hurvitz I)</u>, 3 Pa. D. & C. 5th 480, 483 (Pa. Com. Pl. Phila. Co. 2007) ("A reasonable person in Ms. Hurvitz' position would know that hot water can cause a burn, and as such, reasonable care must be exercised when handling it and removing and replacing a lid."), rev'd on other grounds, <u>"Hurvitz II"</u>, No. 1753 EDA 2007, Doc. 15-12 (Pa. Super. Mar. 13, 2009), allocatur denied, 982 A.2d 1229 (Pa. 2009) (Table). 2:12-cv-02558-CMR (Doc. No. 14 at 3). Defendant in this case also cites <u>Huppe v. Twenty-First Century Restaurants of America, Inc.</u>, 130 Misc.2d 736 (N.Y. Sup. Ct. Broome 1985), aff'd 116 A.D.2d 797 (3d Dep't 1986) and numerous other cases relying upon that decision, in which courts have dismissed claims regarding the excessive heat of a beverage.

<u>Breach of Duty- Failure to Secure Lid/ Double Cupping</u>:

The only remaining theory of negligence is that Starbucks breached its duty to Plaintiff because the barista improperly placed the lid on the tea or did not adequately check to make sure the lid was secure, possibly as a result of there being two cups stacked together. However, Plaintiff's claim is based on mere speculation. While we must consider the evidence in the light most favorable to Plaintiff, she has not presented any actual evidence of Starbuck's negligence.

According to Plaintiff's testimony, she did not notice anything unusual during the transaction when she purchased the tea at the drive-thru, taking it from the barista and placing it into her cupholder in her car. Dep. of Karen Maneri at 80:21-23. She admits that she did not notice the lid being loose when she took the cup or when she placed it in the cup holder. She also admits that no tea spilled onto her hand and she did not recall any tea coming out of the lip or spilling out between the lid and the cup when the barista handed it to her. <u>Id.</u> at 81:9-83:4. She cannot recall if she took the tea from the barista with her right or left hand or how he handed it to her. <u>Id.</u> at 33:19-34:7. She could not recall if she had to transfer the tea from her left hand to her right hand before placing it in her cup holder or which hand she used to put it into the cup holder. <u>Id.</u> at 36:2-37:2. Plaintiff also could not remember if there was anything in her other cupholder, which was in close proximity to the cup holder in which she placed the tea and could not remember if the tea she had purchased earlier in the day from a different Starbucks was still in the car. <u>Id.</u> at 38:23-40:19. Even according to Plaintiff's testimony, she did not incur any injury while she was at the drive-thru or even when she pulled away. She was not injured on the defendant's premises. The incident occurred five minutes later after she had driven all the way home and pulled into her driveway.

Plaintiff has presented no evidence of any negligence on the part of the defendant, other than the simple fact that she was burned when the tea spilled as she pulled into her driveway. According to Plaintiff's testimony, she was driving and didn't know the lid was off of the tea until she felt her leg burning.  Id. at 84:20-23.  She has not alleged any facts which demonstrate that Defendant breached a duty owed to her.  She did not see the lid come off of the tea, but only that after it spilled, the lid was on the floor of her car.  Id. at 44:21-25.  Plaintiff also could not state whether or not the cup was completely vertical in the cup holder after it spilled.  Id. at 46:16-25.  Her daughter, who was a passenger in the car, also did not see the lid come off of the tea.  When asked if they ever discussed whether she saw the lid pop off, Plaintiff indicated that she was probably on her phone.  Id. at 89: 5-16.  She only knew that the lid popped off because after driving over the small lip to get int her driveway she felt the tea burning her leg and the lid was on the ground.  Id. at 48:15-25.

Although Plaintiff does not remember the details of the transaction, including with which hand she took the cup, in an attempt to demonstrate that she did not touch the top of the cup, Plaintiff relied upon the testimony of Reusche, who testified that they are trained to hand the cups to the customers so the customer can grab it where the sleeve is located.  Dep. of Andrew Reusche at 23:23-24:7.  However, even if she took the cup from the barista by holding it at the sleeved area, Plaintiff testified that she does not recall details of placing the cup in the holder, such as whether she transferred the cup to her other hand when placing it into the cup holder. Even considering the testimony in the light most favorable to Maneri, there is simply no evidence to prove that the barista did not properly secure the lid or even that plaintiff did not touch the top of the cup.

Plaintiff admits that her only basis for her claim that the lid was not properly on the cup is that she "can't imagine why else it would come off." Dep. of Karen Maneri at 80:4-11. This mere speculation that because the tea spilled the employee had to have been negligent is simply not sufficient to survive summary judgment. See Moultrey v. Great A & P Tea Co., 422 A.2d 593 (Pa. Super. 1980) ("[T]he mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence.") The proprietor of a store is not an insurer of its patrons, meaning that there is no presumption of negligence based upon the happening of an accident due to a harmful condition. Neve v. Insalaco's, 771 A.2d 786, 790 (Pa. Super. 2001) (citations omitted). Plaintiff has not alleged facts sufficient to support her claim that the incident occurred as a result of an act or omission by Defendant or its employee. In response to the motion, Plaintiff has failed to come forward with facts sufficient to create an issue of material fact as to whether Starbucks breached a duty owed to Plaintiff. Mere speculation or reliance upon the fact that there was an injury are not sufficient. Id.

Count IV- Breach of Warranty of Merchantability

In response to Defendant's motion as to Count III, alleging a claim of product liability, Plaintiff states that she withdrawals her claim. Doc. No. 27 at 18. She also withdrawals Count V, which alleges breach of warranty for fitness for a particular purpose. Doc. No. 27 at 19. However, Plaintiff does not withdrawal her claim of breach of warranty of merchantability.

"The implied warranty of merchantability arises by operation of law, see 13 Pa. Cons.Stat. § 2314, and "serve[s] to protect buyers from loss where goods purchased are below commercial standards," Doughtery v. C.R. Bard, Inc., No. CIV.A. 11-6048, 2012 WL 2940727,

at *6 (E.D. Pa. July 18, 2012), citing, <u>Turney Media Fuel, Inc. v. Toll Bros., Inc.</u>, 725 A.2d 836, 840 (Pa. Super. Ct. 1999). The warranty requires that the goods be "merchantable" or that the goods in question be "fit for the ordinary purposes for which such goods are used." 13 Pa. Cons. Stat. Ann. § 2314(b)(3); <u>Soufflas v. Zimmer, Inc.</u>, 474 F. Supp. 2d 737, 752 (E.D. Pa. 2007). "[M]erchantability does not require that the goods be the best quality...or the best obtainable...but it does require that they have an inherent soundness which makes them suitable for the purpose for which they are designed...that they be free from significant defects, that they perform in the way that goods of that kind should perform...and that they be of reasonable quality within expected variations and for the ordinary purpose for which they are used." <u>Smith v. Howmedica Osteonics Corp.</u>, 251 F. Supp. 3d 844, 854 (E.D. Pa. 2017), citing <u>Gall ex rel. Gall v. Allegheny Cty. Health Dep't.</u>, 521 Pa. 68, 555 A.2d 786, 789–90 (1989).

The Third Circuit has recognized that the implied warranty of merchantability and the rule of strict liability in the Restatement (Second) of Torts 402A are essentially the same. <u>Id.</u>, citing <u>Gumbs v. Int'l Harvester Inc.</u>, 718 F.2d 88, 94 (3d Cir. 1983). In order to prove such a claim, a plaintiff need not prove negligence, but still must prove that the product was defective and the defect was the legal cause of injuries. <u>Tincher v. Omega Flex,</u> 628 Pa. 296, 361 (2014). Under Pennsylvania law, in order for the warranty to be breached, "the product at issue must have been defective or not fit for the ordinary purpose for which it was intended." <u>Altronics of Bethleham, Inc. v. Repco, Inc.</u>, 957 F.2d 1102, 1105 (3d Cir. 1992). To establish a defect, the plaintiff must show, "(1) that the product malfunctioned; (2) that plaintiff used the product as intended or reasonably expected by the manufacturer; and (3) the absence of other reasonable secondary causes." <u>Mattocks v AVI Food Systems, Inc.</u>, No. 2013-4209, 2015 WL 13701408, at *10 (Pa. Com. Pl. Apr. 14, 2015).

In Count IV of her complaint, Maneri alleges that Defendant breached its warranty of merchantability because the "hot beverage and tea it sold and provided to Plaintiff was not merchantable quality because the hot beverage was not provided in an adequate container, to wit: the lid of the provided container failed to stay affixed thereto under foreseeable, reasonable and normal use, causing the container to suffer structural failure and spill its contents onto Plaintiff." Complaint at ¶ 43. Plaintiff has not presented any evidence that the construction or design of the cup or lid were defective or not fit for the ordinary purpose for which they were intended and she does not even respond to that issue in her response to the motion.

Although Count IV of the Complaint (warranty of merchantability) addresses the cup and lid, in Plaintiff's response to the Motion for Summary Judgment, she now alleges that the tea itself was the defective product because it was served too hot. In response to the Motion for Summary Judgment, Plaintiff argues that Starbucks violated the implied warranty of merchantability because they "produced to her a defective and dangerous product- excessively overheated tea" which spilled on her causing severe burns. Doc. No. 27 at 18. In support of the claim, she relies upon the deposition testimony of Starbucks employees, Karr, Reusche and Gisladottir and claims that they testified that they were aware of the excessive heat of the product and often compensated by serving tea products in double cups with sleeves on top of same. Id. at 18-19. Reusche testified that he had been trained to double cup tea and that it helped minimize the heat that is transferred to the hand. Dep. of Andrew Reusche at 17:7-22. Similarly, Gisladottir testified that she was trained to double cup and when asked if it was because the water was "too hot" she responded by stating that it was just "mostly about our comfort that the cup itself would feel a bit hot." Dep. of Idunn Gna Gisladottir Dep. at 11:20-23. When asked about double cupping, Karr testified: "It doesn't hinder the functionality of the cups. A lot of

times, baristas will use them to add an extra layer of protection because it does not hinder the use of the cup." Dep. of Bryn Karr at 13:22-14:2. Finally, Plaintiff also relies upon the testimony of the corporate designee, Karr who testified that she was not aware of when the machine used to boil the water for tea was last calibrated to ensure it was in conformance with Defendant's policies.

As discussed herein, the baristas testified that they used an extra cup as extra protection from the heat of the tea. However, they did not testify that the tea was served at an "excessive" or unreasonably dangerous temperature or at a temperature above any industry or even internal standard. None of this is sufficient to maintain a claim that the tea in this case was not merchantable, i.e. defective or unreasonably dangerous for its intended use, i.e. human consumption. Plaintiff has also not presented evidence that the tea was served in a manner that was not fit for its intended purpose of drinking it. The fact that the tea was hot enough to produce burns if spilled on the skin or that it made the cup hot to the touch does not demonstrate that the tea was an unreasonably dangerous product. As Plaintiff seems to recognize by withdrawing Count V of the Complaint, there is no evidence to sustain her claim that the tea was not fit for its intended purpose of human consumption. Furthermore, while there is certainly a risk that hot tea may cause injury if spilled, this alone does not make it an unreasonably dangerous product. Furthermore, Defendant in this case provided a printed warning on both the lid and the cup. Plaintiff's claim of breach of warranty of merchantability must also be dismissed.

C. <u>Conclusion</u>

For the reasons stated herein, Plaintiff's claims of negligence and breach of warranty of merchantability will not survive summary junction.  Therefore, summary judgment will be entered in favor of Defendant and the action will be dismissed. An appropriate order follows.